# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DOMINICK FRASCA,** | : | **No. 3:22cv2022** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **WALLENPAUPACK LAKE ESTATES** | : | |
| **and WALLENPAUPACK LAKE** | : | |
| **PROPERTY OWNERS ASSOCIATION,** | : | |
| **Defendants** | : | |

## MEMORANDUM

Before the court is a motion to dismiss (Doc. 3) filed by Defendants

Wallenpaupack Lake Estates and Wallenpaupack Lake Property Owners

Association ("Wallenpaupack Lake Estates" or "association").  Having been fully

briefed, this matter is ripe for disposition.[1]

## Background

Wallenpaupack Lake Estates is a private community in Wayne County,

Pennsylvania where plaintiff owns property. (Doc. 1-1, Complaint ¶¶ 1-3).   As a

community subject to a property owner's association, Wallenpaupack Lake

Estates promulgates regulations regarding its members. (See id. ¶¶ 4-9).

Plaintiff acknowledges these regulations apply to him based on his property

---

[1] This matter was transferred to the undersigned by the Honorable Robert D. Mariani on
November 7, 2023.

ownership in the association. (Id.)  Furthermore, because the association operates a marina within the community, some of Wallenpaupack Lake Estates' regulations concern boats and docking of boats at slips in the marina. (Id. ¶¶ 5-9, 11-15).  Plaintiff avers that association regulations prevent him from docking his pontoon boat at the marina.  (Id. at ¶¶ 11-15). [2]

As further alleged, plaintiff bought a pontoon boat for $117,000 in August 2021.[3] (Id. ¶¶ 6-7).  Per plaintiff, his pontoon boat measures more than twenty-four (24) feet in length. (See id. ¶ 11).  Plaintiff avers that defendants historically allowed pontoon boats measuring more than twenty-four (24) feet in length to dock at the marina and use Lake Wallenpaupack.  (Id. ¶ 7).  Such a practice allegedly reflected Pennsylvania Fish and Boat Commission regulations regarding length as reflected on an owner's boat registration card. (Id.)  The certificate of boat registration attached to the complaint indicates that plaintiff's

---

[2] The averments in plaintiff's complaint are subject to a separate motion for sanctions filed Wallenpaupack Lake Estates discussed at the end of this memorandum. (Doc. 7).  The averments in plaintiff's complaint directly contradict information contained within the exhibits attached to the complaint.  Footnote 3 addresses a contradiction regarding the date plaintiff purchased the pontoon boat.  Footnote 5 addresses a contradiction in allegations regarding defendants' change to regulations regarding boat length.

[3] Plaintiff alleges in the complaint that he acquired the pontoon boat in August 2020. (Doc. 1-1 ¶ 6). Plaintiff also avers that he only bought the pontoon boat after relying on statements made by defendants' representative in August 2021 regarding defendants' marina regulations. (Id. ¶¶ 6-7).  The sales receipt attached to the complaint indicates that plaintiff purchased a 2022 Sylvan Marine S3 LS pontoon boat with a Yamaha motor and Venture trailer on August 28, 2021. (Doc. 3-1, Complaint, Exh. A).

pontoon boat measures "24 feet ** **inches**" in length. (Doc. 3-1, Complaint, Exh. B)(emphasis added).[4]  Additionally, plaintiff alleges that similar pontoon boats were allowed to dock and use the lake in accordance with these regulations. (Doc. 1-1, Complaint ¶ 8).

Per the complaint, association regulations at the time of purchase did not preclude or prohibit plaintiff from obtaining a dock slip for use of a pontoon boat on the lake. (Id. ¶ 6).  Additionally, plaintiff contends that he confirmed the regulations with a Wallenpaupack Lake Estates representative by phone prior to buying the boat. (Id.)  Plaintiff also alleges that he purchased the pontoon boat relying on the phone call and the association's interpretation of its regulations at that time. (Id. ¶¶ 6-7).  According to plaintiff, he then used the pontoon boat on a regular basis. (Id. ¶ 10).

Subsequently, per plaintiff, defendants' board of directors "changed the regulations" for boat measurement in October 2022.[5] (Id. ¶ 11). This change prohibited boats over twenty-four (24) feet in length from docking at the marina.

---

[4] The exhibits are not attached to the copy of the complaint included with the notice of removal. (See Doc. 1-1).  For the purposes of discussing the exhibits to the complaint, the court refers to the version attached as an exhibit to the motion to dismiss. (Doc. 3-1).

[5] Although plaintiff avers that defendants' board of directors changed the regulations in October 2022, the exhibits attached to the complaint indicate that he was cited by defendants for having an oversized boat and for "fail[ure] to comply with the marina rules and the request of [defendants'] administration not to have an oversized boat docked in A-1-3 slip" on July 3, 2022 and July 4, 2022. (Doc. 3-1, Complaint, Exh. C).  The July 3, 2022 citation is listed as plaintiff's second offense. (Id.) The July 4, 2023 citation is listed as plaintiff's third offense. (Id.)

(Id.)  Subsequently, plaintiff contends that he lost his dock permit, docking privileges, and direct use of the lake. (Id. ¶ 12).  Plaintiff also alleges that that the association fined and cited him for having an oversized boat in the marina. (Id. ¶ 13, Doc. 3-1, Complaint, Exh. C). These citations are dated July 3, 2022 and July 4, 2022, before plaintiff alleges that the association changed its regulations. (Doc. 3-1, Complaint, Exh. C).

Both citations attached to the complaint indicate that the association previously warned plaintiff about his oversized boat. (Id.)  Furthermore, the association measured his pontoon boat at twenty-five feet and six inches (25' 6") in length per the citations. (Id.)  Such citations state that plaintiff violated Wallenpaupack Lake Estates' general rules and regulations. (Id.)  According to a letter from the association to plaintiff dated October 1, 2022 as attached to the complaint, defendants' "citation dispute committee" later found plaintiff in violation of association regulations after a hearing. (Id.)  Per that same letter, plaintiff maintained an ability to appeal the decision of the citation dispute committee under defendants' regulations, but plaintiff does not aver whether he appealed. (Id.)

On November 30, 2022, plaintiff filed a four-count complaint in the Wayne County Court of Common Pleas. (See Doc. 3-1).  In the complaint, plaintiff asserts the following causes of action: Count I, declaratory relief; Count II,

4

estoppel; Count III, conversion, and Count IV, waiver. (Docs. 1-1, 3-1).  On

December 20, 2022, defendants removed this matter to the United States District

Court for the Middle District of Pennsylvania. (Doc. 1).  Defendant subsequently

filed the instant motion to dismiss, (Doc. 3), and this matter is now ripe for

disposition.

**Jurisdiction**

The court has jurisdiction pursuant to the diversity statute, 28 U.S.C. §

1332.  Plaintiff is a citizen of the State of New York. (Doc. 1-1, Complaint,

Caption).  Defendants are collectively a non-profit corporation incorporated in

Pennsylvania with its principal place of business in Pennsylvania. (Doc. 1, Notice

of Removal, ¶¶ 3-4).  Additionally, the amount in controversy exceeded $75,000

at the time this matter was commenced. (Id. ¶ 5).  Because complete diversity of

citizenship exists among the parties and the amount in controversy exceeded

$75,000 at the commencement of the action, the court has jurisdiction over this

case.  See 28 U.S.C. § 1332 ("district courts shall have original jurisdiction of all

civil actions where the matter in controversy exceeds the sum or value of

$75,000, exclusive of interest and costs, and is between . . . citizens of different

states[.]"); 28 U.S.C. § 1441 (A defendant can generally move a state court civil

action to federal court if the federal court would have had original jurisdiction to

address the matter pursuant to the diversity jurisdiction statute).  As a federal

court sitting in diversity, the substantive law of Pennsylvania shall apply to the

instant case.  Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing

Erie R.R. v. Tomkins, 304 U.S. 64, 78 (1938)).[6]

**Legal Standard**

Defendant filed the instant motion to dismiss pursuant to Federal Rule of

Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be

granted.  The court tests the sufficiency of the complaint's allegations when

considering a Rule 12(b)(6) motion.

"To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face[,]' "

and a claim has facial plausibility when factual content is pled that allows the

court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell

Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not

suffice."  Id. (citing Twombly at 555).

---

[6] Because federal procedural law applies in diversity cases and the Supreme Court has
characterized the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201-2202, as procedural,
the DJA supplies the procedural law that governs this declaratory judgment action even though
plaintiffs requested relief under Pennsylvania's Declaratory Judgments Act prior to removal.
Kelly v. Maxum Specialty Ins. Grp., 868 F.3d 274, 281, n. 4 (3d Cir. 2017).

On a motion to dismiss for failure to state claim, district courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief. See Phillips v. Cty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)(citations omitted).

In resolving a motion to dismiss, a district court "may consider *only* the allegations contained in the pleadings to determine its sufficiency." In re Asbestos Prod. Liab. Litig. (No. VI), 822 F.3d 125, 133 (3d Cir. 2016)(emphasis in original).  The Third Circuit, however, declines to interpret this rule narrowly. See id. at 133, n. 7.  "In deciding motions under Rule 12(b)(6), courts may consider documents *integral to or explicitly relied* upon in the complaint, or any undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document," without converting the motion into one for summary judgment.  Id. (citations omitted, quotation marks, and brackets removed)(emphasis in original); See also Schuchardt v. President of the United States, 839 F.3d 336, 347, n. 7 (3d Cir. 2016)(citations omitted).

## Analysis

Wallenpaupack Lake Estates moves to dismiss all of plaintiff's causes of action, which are for declaratory relief, estoppel, conversion, and waiver.  The

7

court will address each of the association's arguments regarding these claims in turn.

## 1. Declaratory Relief

As noted, Count I of the complaint asserts a cause of action for declaratory relief. Plaintiff seeks a declaration that defendants cannot preclude him from docking his pontoon boat in its marina through its regulations or its modified interpretation of its regulations. Wallenpaupack Lake Estates first argues that plaintiff is not entitled to declaratory relief under Pennsylvania law.[7] More specifically, the association argues that this case involves a matter of contract and that the parties are governed by the association's regulations. The association further argues that plaintiff is ultimately asking the court to invalidate this contract regarding property subject to the association's jurisdiction and declare that the association is precluded from enforcing community covenants, by-laws, and regulations. Plaintiff counters that he has set forth a plausible claim

---

[7] As this matter has been removed to federal court, "federal law will be applied and will control whether or not the court can render a declaratory judgment[;] state law is to be applied to the underlying substantive issues." Britamco Underwriters, Inc. v. C.J.H., Inc., 845 F. Supp. 1090, 1093 (E.D. Pa. 1994), aff'd, 37 F.3d 1485 (3d Cir. 1994)(table). Federal law controls as to whether the court can issue a declaratory judgment in this matter. Under the DJA, courts "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought[,]" so long as the case involves an actual controversy. 28 U.S.C § 2201. Moreover, "the question in each [declaratory judgment] case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Maryland Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941).

for declaratory relief, along with claims for estoppel, waiver, and conversion. After careful consideration of the averments in plaintiff's complaint and review of Pennsylvania law, as further discussed below, plaintiff's claim for declaratory relief will be dismissed.

First, the court will consider Wallenpaupack Lake Estates' marina regulations. Although not attached as an exhibit to the complaint, plaintiff repeatedly references the association's regulations in his averments. (Doc. 1-1 ¶¶ 5-9, 11-15, 17-18). Plaintiff also makes a claim for waiver in Count IV of his complaint. (Id. ¶¶ 29-30). Although he refers to these regulations as association "laws" in that cause of action, plaintiff avers that the association waived its right to enforce these regulations or their interpretations of them. (Id.) Plaintiff is clearly subject to the association's regulations through his property ownership in the association's community. Accordingly, the court will proceed to consider the association's regulations as documents "integral to or explicitly relied upon in the complaint." *Schuchardt*, 839 F.3d 347, n. 7 (citations omitted).

Wallenpaupack Lake Estates' regulations provide that all marina slips are the property of the association, and that association members like plaintiff only rent the slip. (Doc. 3-1, Exh. D, Marina Rules and Regulations (2021) ¶ 1, Exh. E, Marina Rules and Regulations (2022) ¶ 1). Regarding boat length, the 2021 marina regulations provide:

20.) Due to the amount of water space between the slip fingers, your watercraft cannot exceed twenty-four (24) feet in length or eight and one half (8 1/2) feet in width. Auxiliary floatation devices (dinghy's [sic], rafts, floats) CANNOT be tied to watercraft in their slips. All such items must be placed within and may not extend over front, back or sides of the watercraft.

(Doc. 3-1, Exh. D, Marina Rules and Regulations (2021) ¶ 20).

For the 2022 boating season, defendants' boat length regulations were modified. Specifically, the newer regulation provides:

20.) Due to the amount of water space between the slip fingers, your watercraft cannot exceed twenty-four (24) feet in length or eight and one half (8 1/2) feet in width. **Swim platforms or accessories cannot be added to a boat that will result in the boat being more than 24 feet in length.**

 a. Auxiliary floatation devices (dinghy's [sic], rafts, floats) CANNOT be tied to watercraft in their slips. All such items must be placed within and may not extend over front, back or sides of the watercraft.

 b. **Boats new to the Marina will have to furnish manufacturer's specification along with the registration and insurance forms. If manufacturer's specifications are not available, a representative from [the association] will measure the boat to make sure its size adheres to the Marina Rules and Regulations.**

(Doc. 3-1, Exh. E, Marina Rules and Regulations (2022) ¶ 20)(emphasis added to new regulations).

Defendants' marina regulations from the relevant time frames are clear: watercraft docked at the marina cannot exceed twenty-four (24) feet in length.

The parties here are controlled by the above regulations.  Under Pennsylvania law, a property owner's association is analogous to a miniature government. Hess v. Barton Glen Club, Inc., 718 A.2d 908, 912 (Pa. Commw. Ct. 1998); Meadow Run & Mountain Lake Park Ass'n v. Berkel, 598 A.2d 1024, 1026 (Pa. Super. Ct. 1991).  "When the owners of property in a residential development are permitted to use the common areas of a development, there is an implied agreement to accept a portion of the cost of maintaining those facilities." Hess, 718 A.2d at 912 (citing Meadow Run).  Additionally, "a deed [can] properly grant a property owner the right to use a common facility subject to binding rules and regulations regarding that right [,]" and "the power to impose a binding rule, by necessity, includes the power to enforce the rule." Id. at 914 (citation omitted).[8]  By buying property subject to the association and using the association's recreational facilities, plaintiff consented to be governed by the association's rules regarding common facilities such as the marina.

---

[8] In Hess, the Commonwealth Court of Pennsylvania also stated:

> one of the advantages of owning property in a modern residential development governed by a homeowner's association in a resort area is that such developments provide and maintain recreational facilities and other amenities far beyond those which would be considered absolutely necessary for the community to function. They add value to the individual owner's property and enhance the quality of the community.

718 A.2d at 915.

11

Although property owner's associations are analogized to miniature governments under Pennsylvania law, this case still involves private property interests.  The court must consider the property interest that plaintiff claims, which is difficult because that interest is not pled in the complaint.  Rather, plaintiff only states that he had "rights to use the Lake located in Defendant's jurisdiction," (Doc. 1-1 ¶ 4), and "existing pontoon boat rights," (Id. ¶ 17).  After parsing plaintiff's complaint and reviewing his exhibits, plaintiff claims a property interest in his marina dock slip that permits him, per his estoppel-related allegations, to moor his specific pontoon boat at the marina despite the letter of the association's regulations.  The property interest in the dock slip derives from his ownership of real property in the Wallenpaupack Lake Estates community, his payment of association dues and fees, and supplemental fees paid for use of the marina.

As mentioned above, the dock slip, once obtained, is subject to dozens of rules and regulations.  For example, a dock slip holder can sublet the slip for up to two consecutive years, but a property owner in the association must use the slip himself before the right is forfeited back to the association. (Doc. 3-1, Exh. D, Marina Rules and Regulations (2021) ¶ 17, Exh. E, Marina Rules and Regulations (2022) ¶ 17).  Plaintiff's right to use the dock slip is also contingent on being a property owner in "good standing" and having paid all association fees

and dues. (Id. ¶¶ 2-5).  Otherwise, the association can remove a boat and the slip can be forfeited. (Id.)  After review of these detailed regulations, the dock slip has more characteristics of a license versus a lease. See Sparrow v. Airport Parking Co. of Am., 289 A.2d 87, 91 (1972)(holding that use of a parking lot is not a lease, but a license, since that use is a purely personal privilege to do certain acts on the land, but not to exercise exclusive possession and enjoyment for a term specified).

Under Pennsylvania law regarding licenses, the holder of a license is simply given permission by the occupant of land to do something that otherwise would be a trespass. Morning Call, Inc. v. Bell Atl.-Pennsylvania, Inc., 761 A.2d 139, 144, n. 8 (Pa. Super. Ct. 2000).  Licenses are ordinarily revocable at will. LARA, Inc. v. Dorney Park Coaster Co., 542 A.2d 220, 223 (Pa. Commw. Ct. 1988)(citations omitted).  Structures fronting navigable waters may be licensed, see City of Allegheny v. Campbell, 107 Pa. 530, 534 (1885)(discussing the license of a wharf), and the use of a waterway may be licensed, see Vill. of Four Seasons Ass'n, Inc. v. Elk Mountain Ski Resort, Inc., 103 A.3d 814, 824 (Pa. Super. Ct. 2014)(citation omitted).  It follows that a boat slip or a dock slip can be subject to a license.

Pennsylvania recognizes the doctrine of irrevocable license. See Harkins v. Zamichieli, 405 A.2d 495, 498 (Pa. Super. Ct. 1979)(citing Pierce v. Clelland, 133

13

Pa. 189, 19 A. 352 (1890)).  This doctrine is based upon the equitable principle of estoppel.  Kovach v. Gen. Tel. Co. of Pennsylvania, 489 A.2d 883, 885 (Pa. Super. Ct. 1985).  The court considers the irrevocable license doctrine because plaintiff pleads estoppel and waiver as separate causes of action in his complaint and those concepts involve similar equitable principles.

A license becomes irrevocable "when the licensee relies on it to his detriment, by expending money, labor, or treating his property differently because of the license." Vill. of Four Seasons Ass'n, Inc., 103 A.3d at 824 (citation omitted).   "The justifiable reliance necessary to make a license irrevocable requires proof that (1) reliance was after the grant of a license; (2) the licensee cannot be restored to his original position; (3) and the expenditures outweigh the benefits." Id. at 825, n. 11 (citing Buffington v. Buffington, 568 A.2d 194, 200–01 & n. 7 (Pa. Super. Ct. 1989)).

The doctrine of irrevocable license, however, is not applicable here.  Per plaintiff's allegations, he allegedly relied on the association representative's statements before he expended money on a pontoon boat to dock at the slip.  He did not, however, build permanent improvements on the land, i.e., the slip, as contemplated by the irrevocable license cases in Pennsylvania. See Messinger v. Washington Twp., 137 A.2d 890, 893 (Pa. Super. Ct. 1958)(stormwater drains); Harkins, 405 A.2d 495, 498 (driveway); Dailey's Chevrolet, Inc. v.

14

Worster Realties, Inc., 458 A.2d 956, 960 (Pa. Super. Ct. 1983)(improvements to land used for ingress and egress and purchase of nearby properties); Morning Call, Inc., 761 A.2d at 144 (installation of telephone equipment on a building).

Furthermore, the complaint does not aver facts that support critical elements of the irrevocable license doctrine.  Plaintiff has not alleged that he cannot be restored to his original position. Rather, under the circumstances, plaintiff can use a slightly shorter vessel that meets association regulations to use the slip.  Additionally, plaintiff has not pled that he is forever precluded from accessing Lake Wallenpaupack without the slip.  For these additional reasons, plaintiff cannot recover under a theory of irrevocable license.

Principles of contract law must also be considered regarding this license.[9] Under Pennsylvania law, "[a] license based on valuable consideration is a contract, and the rights and the obligations of the parties under such a license agreement depend on the provisions thereof." Sparrow, 289 A.2d at 91.  The following contact principles are applicable:

> In interpreting the terms of a contract, the cardinal rule followed by courts is to ascertain the intent of the contracting parties. Lesko v. Frankford Hosp.-Bucks Cty., 609 Pa. 115, 15 A.3d 337, 342 (Pa. 2011). If the contractual terms are clear and unambiguous on their face, then such

---

[9] If the dock slip is more akin to a lease, contract principles also apply. Like a license, "a lease is a contract and is to be interpreted according to contract principles."  Hutchison v. Sunbeam Coal Corp., 519 A.2d 385, 389 (Pa. 1986)(citation omitted).

terms are deemed to be the best reflection of the intent of the parties. Kripp v. Kripp, 578 Pa. 82, 849 A.2d 1159, 1162 (Pa. 2004). If, however, the contractual terms are ambiguous, then resort to extrinsic evidence to ascertain their meaning is proper. Murphy v. Duquesne Univ. of the Holy Ghost, 565 Pa. 571, 777 A.2d 418, 429 (Pa. 2001). A contract's terms are considered ambiguous " 'if they are subject to more than one reasonable interpretation when applied to a particular set of facts.' " Id. at 430.

Commonwealth by Shapiro v. UPMC, 208 A.3d 898, 909–10 (Pa. 2019)(quoting Commonwealth ex rel. Kane v. UPMC, 129 A.3d 441, 443 (Pa. 2015).

Here, the 2021 and 2022 association regulations regarding boat length are unambiguous, twenty-four (24) feet means twenty-four (24) feet. All of plaintiff's allegations about different interpretations of boat length would be inadmissible extrinsic evidence about the parties' agreement subject to this claim for declaratory relief.

Furthermore, the determination of whether a boat fits within the twenty-four (24) feet restriction is a matter of Wallenpaupack Lake Estates' discretion as stated in the regulations. This contemplates the different ways a pontoon boat may be measured, such as factoring in the length of floats or pontoons or decks extending out from the boat. Specifically, the 2022 regulations note that platforms or accessories cannot be added to a boat that will result in the boat being more than twenty-four (24) feet in length. (Doc. 3-1, Exh. E, Marina Rules and Regulations (2022) ¶ 20). Plaintiff's rights in the dock slip were also subject to the provision requiring new boats to furnish manufacturer's specification along

16

with registration and insurance forms. (Id. ¶ 20b.).  Per this regulation, if manufacturer's specifications are not available, a representative from the association is authorized to make sure the size of the boat adheres to the twenty-four (24) feet restriction. (Id.)  Plaintiff confirms he purchased the boat in August 2021 per the sales slip attached to the complaint.  His boat thus became new to the marina between the 2021 and 2022 boating season and was subject to the 2022 regulations giving the association the authority to measure it.  This resulted in the determination that the boat exceeded the length restriction by more than one foot.  These provisions in the 2022 marina regulations are likewise unambiguous.  Under these circumstances, a court cannot rewrite the contract to say that twenty-four (24) feet means the length of plaintiff's pontoon boat. See Steuart v. McChesney, 444 A.2d 659, 662-63 (1982)(discussing a court's role in the process of interpreting a contract where that contract is express and clear).

Finally, plaintiff avers that Wallenpaupack Lake Estates acted improperly and illegally in changing the rule about measuring boat length.  Plaintiff, however, fails to allege what laws or regulations were violated other than vague references to Pennsylvania's Fish and Boat Commission's boat measurement system.

A thorough review of Pennsylvania's Fish and Boat Code and Pennsylvania Fish and Boat Commission regulations reveals no apparent legal or regulatory guidance in Pennsylvania regarding boat measurements.  Pursuant to

Pennsylvania's Fish and Boat Code, 30 PA. CONS. STAT. § 101, *et seq.,* the Commonwealth requires registration of boats. 30 PA. CONS. STAT. § 5306.  Any person owning a boat must make a written application for registration to the commission. 30 PA. CONS. STAT. § 5305(a),(c).  The Fish and Boat Code classifies registration fees by boat length. 30 PA. CONS. STAT. § 5104(a).  Owners must pay a $26.00 registration fee per year for motorboats twenty (20) feet or longer. 30 PA. CONS. STAT. § 5104(a)(2.1).  Put another way, all boats greater than twenty (20) feet require the same registration fee.  For the purposes of state registration, the fact that plaintiff's pontoon boat measures greater than twenty (20) feet or twenty-four (24) feet is immaterial.

Per the Fish and Boat Code, the Pennsylvania Fish and Boat Commission is also authorized to promulgate rules and regulations concerning the operation of boats. See 30 PA. CONS. STAT. § 322(2), § 5123(a).  Pursuant to these regulations, boat owners register their crafts using Form REV-336, which requires applicants to provide "[t]he length of the boat in feet and inches." 58 PA. CODE. § 93.3.  It appears, however, that the Fish and Boat Commission has not issued regulations regarding how boats are measured.  Plaintiff has not averred

how he measured his pontoon boat or what measurement he (or the boat dealer) placed on his registration form.[10]

The above review of Pennsylvania law shows no evident illegality by Wallenpaupack Lake Estates in terms of limiting the length of boats in the marina, or how the length of a boat is determined by the association. Plaintiff's complaint thus fails to support with facts that defendant's conduct was illegal. Rather, plaintiff's complaint avers that he is subject to the regulations of a property owners' association and the use of the dock slip at the association marina is a matter of their discretion. Accordingly, plaintiff fails to state a claim for declaratory relief. Count I of the complaint will be dismissed.

### 2. Promissory Estoppel

Count II in plaintiff's complaint asserts a cause of action for "estoppel." The complaint does not include the phrase "promissory estoppel," but plaintiff indicates in his brief in opposition that these allegations support a claim for promissory estoppel. (Doc. 5 at 4). So, the court will consider whether the above

_____

[10] To the extent that the Pennsylvania Fish and Boat Commission Boating Handbook provides any guidance, the Superior Court of Pennsylvania has rejected arguments that the handbook constitutes the law or provides regulatory authority. Loomis v. Bomba, 270 A.3d 1114 (table), 2021 WL 5626372 at *6 (Pa. Super. Ct. December 1, 2021)(non-precedential)(By its express language, the Handbook does not "present the actual laws and regulations.")

allegations set forth that cause of action.[11]  The complaint is not a model of clarity

regarding promissory estoppel.  Plaintiff avers as follows:

> 5. At the time that Plaintiff acquired the Pontoon Boat in question, on or about August 2020, then rules and restrictions did not preclude or prohibit in any way the Plaintiff or any other owner in the Development who were subject to the Defendants' Rules and regulations from getting a docking permit for using a Pontoon Boat on the lake, as confirmed by Plaintiff in a phone call with Cathy Salene, Defendant's representative, in August, 2021. . .

> 7. As aforesaid, before Plaintiff purchased the Pontoon Boat, Plaintiff confirmed that Defendant interpreted the Rules and Regulations so as to allow any owner in the Community to dock and use the Lake for his size Pontoon Boat, ie., 24 feet as set forth in the registration of the Pennsylvania Fish and Boat Commission. . .and further, that Defendant had allowable practices and procedures in place to support utilizing a Dock for his direct use of the Lake since the Defendant then followed the Pa. Fish and Boat Commission's regulations as to the determination of boat length. . .

> 9. Plaintiff, in reliance on the then existing Rules and Regulations, referenced herein, and phone call confirmed by Cathy Salene, (allowing docking, slips and direct lake use of his Pontoon Boat to be purchased), and, in reliance on the fact that it was established practice for boat owners to receive permits for the same, again confirmed with the Defendant, expended the sum of $117,000 to acquire the Pontoon Boat in question with the intent to dock and store the Pontoon Boat on the Lake and directly use it accordingly. . .

---

[11] While equitable estoppel is an affirmative defense, promissory estoppel or "detrimental reliance" may serve as an independent cause of action in Pennsylvania. See Peluso v. Kistner, 970 A.2d 530, 533 (Pa. Commw. Ct. 2009)

> 20. Plaintiff avers that Plaintiff relied on the representation of Caty Salene and the then interpretation of the boat measuring rule and the prior practices which were in existence and which were consistent when Plaintiff purchased the Pontoon Boat in question. [sic]

(Id. at ¶¶ 5, 7, 9, 20).

Under Pennsylvania law, "the doctrine of promissory estoppel is invoked to avoid injustice by making enforceable a promise made by one party to the other when the promisee relies on the promise and therefore changes his own position to his own detriment." Crouse v. Cyclops Indus., 745 A.2d 606, 610 (Pa. 2000). "Promissory estoppel enables a person to enforce a contract-like promise that would be otherwise unenforceable under contract law principles." Peluso v. Kistner, 970 A.2d 530, 532 (Pa. Commw. Ct. 2009)(citations omitted).

To succeed on a claim for promissory estoppel under Pennsylvania law, a plaintiff must plead and prove that: (1) the promisor made a promise that he should have reasonably expected to induce an action or forbearance on the part of the promisee; (2) the promisee actually took action or refrained from taking action in reliance on the promise; and (3) injustice can only be avoided by enforcing the promise. Erie Ins. Exch. v. United Servs. Auto. Ass'n, 307 A.3d 1221, 1225 (Pa. Super. Ct. 2023)(citing Crouse, 745 A.2d at 610).  "These factors are strictly enforced to guard against the 'loose application' of promissory estoppel." Peluso, 970 A.2d at 533 (quoting Fried v. Fisher, 196 A. 39, 43 (Pa.

1938)).  Put another way, promissory estoppel "may be invoked only in those cases where all the elements of a true estoppel are present, for if it is loosely applied[,] any promise, regardless of the complete absence of consideration, would be enforceable." Stelmack v. Glen Alden Coal Co., 339 Pa. 410, 416, 14 A.2d 127, 129 (1940).

Moreover, a plaintiff must also allege an express promise, "as a 'broad and vague implied promise' will not suffice. Dirbin v. Philly Mktg. Grp. Inc., No. CV 19-2653, 2020 WL 1491317, at *6 (E.D. Pa. Mar. 27, 2020)(quoting C&K Petroleum Products, Inc. v. Equibank, 839 F.2d 188, 191-92 (3d Cir. 1988)). The promise must also indicate the intent of the parties with reasonable certainty. Cohn v. Pennsylvania State Univ., No. CV 19-2857, 2020 WL 2770684, at *8 (E.D. Pa. May 28, 2020)(citing MRO Corp. v. Humana Inc., 383 F. Supp. 3d 417, 424 (E.D. Pa. 2019))(further citations omitted).

Here, the alleged promise itself is difficult to parse out from plaintiff's pleading. In fact, it remains unclear what the association's representative expressly promised plaintiff from his allegations.  One interpretation is that the association's representative promised that regulations did not preclude plaintiff from getting a docking permit for "using a Pontoon Boat on the lake[.]" (Doc. 1-1 at ¶ 5). Another way the complaint can be construed is that plaintiff relied on how he perceived the regulations to be interpreted by the association along with

22

Fish and Boat Commission Regulations, which plaintiff confirmed in some way.[12]
(Id. at ¶ 7).    A third interpretation involves reliance on both the association
representative's statements "allowing docking, slips, and direct use of the
Pontoon Boat to be purchased" and "the fact that it was an established practice
for boat owners to receive permits for same, again confirmed by the Defendant[.]"
(Id. at ¶ 9, see also ¶ 20).  The court concludes that plaintiff has only pled a
broad and vague implied promise, which is insufficient to support a claim for
promissory estoppel.

For the sake of discussion, it may be determined that plaintiff has pled an
express promise through a very liberal construction of his pleading.  At best, it
can be construed that plaintiff purchased the pontoon boat after speaking with
defendants' representative by phone and confirming that association regulations
would allow for the docking of a boat in excess of the length restriction in the
regulations. (See Doc. 1-1 at ¶¶ 5-7, 9, 20-22).  Under the circumstances,
however, it cannot be inferred that the association promised that it would never
enforce boat length regulations or exercise its discretion in restricting boats in the
marina if plaintiff bought a specific pontoon boat.  Plaintiff's promissory estoppel
claim thus must be dismissed.

---

[12] This specific averment does not indicate how plaintiff confirmed this perception. (See Doc. 1-
1 ¶ 7).

Additionally, "justifiable reliance on an oral promise. . .must end when the same parties later enter into a contract that directly contradicts that promise." Frank Krammes Timber Harvesting, Inc. v. Letourneau Enterprises, LLC, No. 3:18-CV-1914, 2021 WL 1647925, at *5 (M.D. Pa. Apr. 27, 2021) (citing Schnell v. Bank of New York Mellon, 828 F. Supp. 2d 798, 808 (E.D. Pa. 2011) (A plaintiff "cannot claim justifiable reliance when she soon thereafter signed a written contract that explicitly contradicted the alleged oral promise.").

As alleged here, Wallenpaupack Lake Estates' representative allegedly made statements to plaintiff contemporaneous with his purchase of the pontoon boat in August 2021.  Plaintiff then agreed to the association's 2022 marina regulations with the boat length restriction when he paid for his dock slip for the 2022 season.  The 2022 regulations expressly contradict any earlier implied promise made in August 2021.  To the extent that the alleged promise contradicts a later written contract between the parties, plaintiff's claim must be dismissed.

Moreover, the court is unwilling to ignore common sense considerations in ruling on this motion to dismiss.  Plaintiff's theory of liability in this matter centers on a measurement found on a state registration document that is a matter of self-reporting.  The actual size of a boat cannot be established through registration documents.  Based on plaintiff's averments and his legal theory, plaintiff could

register any larger boat as measuring twenty-four (24) feet in length with the Commonwealth and expect the association to forego the marina regulations stated in the parties' written contract. He cannot recover on this theory and Count II of the complaint will be dismissed.

### 3. Conversion

Wallenpaupack Lake Estates also moves to dismiss plaintiff's claim for conversion of the pontoon boat. In support of his conversion claim, plaintiff avers that the association's regulations impact his property interest in the pontoon boat and constitute a taking without his consent. (Doc. 1-1 ¶¶ 24-25). Further, plaintiff alleges that Wallenpaupack Lake Estates' regulations impact the use and marketability of the pontoon boat. (Id. at ¶¶ 26, 28). Additionally, plaintiff contends that the association acted intentionally and willfully. (Id. at ¶ 27). The association argues that plaintiff's complaint fails to set forth a claim for conversion. The court agrees.

Under Pennsylvania law, "[c]onversion is a tort by which the defendant deprives the plaintiff of his right to a chattel or interferes with the plaintiff's use or possession of a chattel without the plaintiff's consent and without lawful justification." Pittsburgh Const. Co. v. Griffith, 834 A.2d 572, 581 (Pa. Super. Ct. 2003). Conversion has also been described as the "willful interference with a chattel, done without lawful justification, by which any person entitled thereto is

deprived of use and possession." Norriton E. Realty Corp. v. Cent.-Penn Nat. Bank, 254 A.2d 637, 638 (Pa. 1969)(citation omitted).

Plaintiff has not averred exactly how he has been deprived of use and possession of the pontoon boat by defendants' alleged interference. Although Wallenpaupack Lake Estates operates a marina, it is not the only place on Lake Wallenpaupack to put a boat on the water. Plaintiff does not allege that he is otherwise prevented from using his pontoon boat on this lake or any other lake. Additionally, plaintiff alleges that he has lost the marketability of the pontoon boat, but again, this statement is conclusory and contradicts the other allegations. Rather, the allegations in the complaint only support a claim that plaintiff cannot sell his pontoon boat to someone in the Wallenpaupack Lake Estates community who wishes to dock at the association marina. The market for pontoon boats is not so restricted to render the association's action a conversion.

Furthermore, an element of a *prima facie* case of conversion is that the defendants acted without lawful justification. Schulze v. Legg Mason Wood Walker, Inc., 865 F. Supp. 277, 284 (W.D. Pa. 1994)(citations omitted)(applying Pennsylvania law). Plaintiff bears the burden of proof on this element, and it is not an affirmative defense. Id. As detailed above, the exhibits to plaintiff's complaint and the association's marina regulations establish the boat length

restriction in the written agreement between the parties.  These regulations were enforced through private citation by the association and a private hearing process, as detailed in the exhibits to plaintiff's complaint.  The association's regulations do not violate Pennsylvania law or Fish and Boat Commission regulations.  Thus, it cannot be said that the association acted without lawful justification per plaintiff's allegations.

In light of the above, plaintiff's complaint fails to state a claim for conversion.  Accordingly, Count III of the complaint will be dismissed.

### 4. Waiver

Finally, plaintiff brings a separate cause of action for "waiver."  Waiver is considered an affirmative defense in Pennsylvania, not an independent cause of action. Angino & Rovner, P.C. v. Sovereign Bank, N.A., 39 Pa. D. & C. 5th 449, 2014 WL 11456035, at *4 (Berks Cty. Ct. Comm. Pl May 13, 2014), aff'd Angino & Rovner, PC v. Santander Bank, N.A., No. 489 MDA 2014, 2015 WL 6405714, at *7 (Pa. Super. Ct. Jan. 28, 2015)(unreported)(citing PA. R. CIV. P. 1030(a)). The claim set forth in Count IV is not recognized in Pennsylvania and will thus be dismissed.

### 5. Leave to Amend

Before dismissing a complaint for failure to state a claim upon which relief may be granted, a court must grant the plaintiff leave to amend his complaint,

unless amendment would be inequitable or futile. See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 245 (3d Cir. 2008); Grayson v. Mayview State Hospital, 293 F.3d 103, 114 (3d Cir. 2002).

The court specifically concludes here that a curative amendment would be futile because plaintiff's causes of action are legally insufficient on the facts pled and these claims would still be legally insufficient if the court afforded plaintiff leave to amend.  For example, principles of Pennsylvania property and contract law preclude declaratory relief where there is a written agreement between the parties for use of the dock slip that expressly states the boat length limitation for the marina.  Additionally, for the purposes of the promissory estoppel claim, plaintiff has only set forth a broad and vague implied promise in his allegations that contradicts the earlier and later written agreements between the parties.  If the association's representative stated any promise regarding the association's boat length regulations more clearly, that statement would have been placed more prominently in the original complaint.[13]  Finally, plaintiff's claim for conversion is also deficient because there are no facts that could plausibly set forth that the association has precluded plaintiff from using his pontoon boat on

---

[13] Although similar to plaintiff's promissory estoppel claim, plaintiff's affirmative claim for waiver is not recognized under Pennsylvania law.  If plaintiff's waiver claim can stand alone, the same futility principles that apply to the promissory estoppel claim apply to the cause of action for waiver.

28

Lake Wallenpaupack or elsewhere.  Accordingly, plaintiff's complaint will be dismissed with prejudice.

### 6. Motion for Rule 11 Sanctions

Also pending before the court is a motion for sanctions filed against plaintiff's counsel pursuant to Federal Rule of Civil Procedure 11. (Doc. 7).  The motion seeks dismissal of the complaint with prejudice and $500.00 in attorneys' fees and costs.  (Id.)  "Generally, [Rule 11] sanctions are prescribed only in the exceptional circumstance where a claim or motion is patently unmeritous [sic] or frivolous." Ford Motor Co. v. Summit Motor Prod., Inc., 930 F.2d 277, 289 (3d Cir. 1991).

Following consideration of the motion to dismiss, the court reviewed the parties' legal arguments relative to the motion for sanctions and concludes that sanctions are not warranted in this matter.  The motion for sanctions will thus be denied.

### Conclusion

For the reasons set forth above, Wallenpaupack Lake Estates' motion to dismiss (Doc. 3) is granted.  Plaintiff's complaint is dismissed with prejudice without leave to amend.  Wallenpaupack's motion for sanctions (Doc. 7) will be denied.  An appropriate order follows.

Date: _____

**JUDGE JULIA K. MUNLEY**
**United States District Court**